**WO**                                                                                          TCK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Charles McManus                                 )     No. CV 03-2327-PHX-MHM (JRI)
                                                )
              Plaintiff,                        )     **ORDER**
                                                )
vs.                                             )
                                                )
                                                )
Carl Dodge, et al.,                             )
                                                )
              Defendants.                       )
_____           )

        In this civil rights action brought by a state prisoner, Defendants Dodge, Dolce,
Larsen, Walker, Schriro, Pierce, Thelen, Rabideau and Britton moved for summary judgment
(Doc.#53).  Plaintiff has filed a response (Doc. #83).  The Court will grant Defendants'
motion.

**I.  Procedural Background**

        Plaintiff's Amended Complaint (Doc. #8) sets forth four grounds for relief: **Count I**:
Plaintiff claims that Officer Dodge violated his due process rights by his failure to accept
Plaintiff's existing medical condition to demonstrate his need for special accommodations
under the Inmate Work Program. As a result, Plaintiff was not subject to job restrictions
based on medical limitations and therefore "punished prior to any disciplinary process."
(Amend. Compl. at 4).  **Count II**: Plaintiff claims that Defendants Larsen, Walker, Schriro,
Pierce, Thelen and Rabideau violated his due process rights in his disciplinary case by their
failure to take corrective action and by their failure to notify sections within the unit of the

dismissal of his disciplinary appeal, thus subjecting him to a substantial reduction in privileges. **Count III**: Plaintiff alleges that Defendant Pierce failed to allow him to call witnesses at the disciplinary hearing and failed to issue a statement. Plaintiff contends that Defendant Britton failed to comply with ADC disciplinary number 803, Inmate Disciplinary System and failed to allow witness statements. As a result, Plaintiff was not allowed to call witnesses. Plaintiff contends that Defendant Walker failed to address the violation of his inability to call witnesses at the disciplinary hearing. **Count IV**: Plaintiff contends that Defendant Walker failed to take corrective action once she was made aware that Plaintiff was still being punished several months following the dismissal of his disciplinary action.

On October 12, 2005, Defendants moved for summary judgment (Doc. #53). In their Motion, Defendants argue: (1) Plaintiff failed to exhaust his administrative remedies because he did not appeal the reclassification decision and therefore, this action should be dismissed for failure to exhaust administrative remedies; (2) Plaintiff failed to produce written proof in the form of a medical special needs order to justify special consideration for his work assignment (3) Plaintiff did not suffer an "atypical and significant" hardship and therefore, he has failed to state a claim of denial of due process in prison disciplinary proceedings. Plaintiff has filed a response (Doc. #83).

**II.  Standard For Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion, and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.

1    Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the
2    evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.
3    at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The
4    opposing party need not establish a material issue of fact conclusively in its favor; it is
5    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
6    parties' differing versions of the truth at trial."  First Nat'l Bank of Arizona v. Cities Serv.
7    Co., 391 U.S. 253, 288-89 (1968).  Finally, when considering a summary judgment motion,
8    the evidence of the non-movant is "to be believed, and all justifiable inferences are to be
9    drawn in his favor."  Anderson, 477 U.S. at 255.

10   **III. Analysis: Exhaustion**

11       **1. Legal Standard**

12       Plaintiff must first exhaust available administrative remedies before bringing this
13   action.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill,  449 F.3d 1047,1050 (9th Cir.
14   2006).  Exhaustion is required regarding all suits about prison life, Porter v. Nussle, 534 U.S.
15   516, 523 (2002), regardless of the type of relief offered through the administrative process,
16   Booth v. Churner, 532 U.S. 731, 741 (2001).  For exhaustion to be "proper," the prisoner
17   must comply with the prison's procedural rules, including deadlines, as a precondition to
18   bringing suit in federal court.   Ngo v. Woodford, 126 S. Ct. 2378, 2385-86 (2006).

19       Defendants bear the burden of raising and proving the absence of exhaustion.  Wyatt
20   v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Because exhaustion is a matter of
21   abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to
22   decide disputed issues of fact. Id. at 1119-20.  Further, a court has broad discretion as to the
23   method to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's &
24   Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

25       **2. Discussion**

26       In the Amended Complaint, Plaintiff alleges that he was wrongfully reclassified from
27   a Level 3 to a Level 4 housing unit following a major disciplinary violation which was
28   ultimately dismissed.

1    In their Motion for Summary Judgment, Defendants argue that this action should be
2    dismissed for Plaintiff's failure to exhaust his administrative remedies.  In support of their
3    motion,  Defendants have submitted the affidavit of Audrey Burke, Administrator of
4    Offender Services Bureau at ADOC (Arizona Department of Corrections) (Ex. A, Doc. #54).
5    Burke asserts that reclassification is a three-level process, separate from the disciplinary
6    process, that can be triggered after an inmate is found guilty of the Inmate Disciplinary
7    Rules. The ADC's three-level reclassification process requires the following steps:

8    (1) If referred for reclassification, inmates appear at a hearing before the ICC
9    (Institutional Classification Committee), which recommends housing
     placement and security risk (P/I score) adjustment;

10   (2) The Unit Deputy Warden (or complex warden) reviews the ICC's
11   recommendation and concurs or disagrees. The ADC Central Classification
     Office in Phoenix utimately determines housing and P/I adjustment.
12
13   (3) an inmate who is not satisfied with the decision may appeal within 15 work
     days, the Central Classification Office decision.
14
15   (Burke Aff. at ¶ 12-15).

16    The record reflects that in May 2003, Plaintiff was charged with and found guilty of
17   a major disciplinary violation in 03-A16-0782. (Def. SOF, Exhibit A, Affidavit of Burke).
18   Plaintiff appealed the decision.  On May 2, 2003, Plaintiff was referred for classification
19   review. (Def. Attachment 3-ADC Classification Referral Notice dated 5/2/03).  On May 5,
20   2003, Plaintiff appeared before the ICC for classification review (Def SOF, Ex. A, Aff. of
21   Burke).   The ICC recommended increasing Plaintiff's Risk Score from 3 to 4 and
22   transferring him to Rynning Unit.  On May 9, 2003, Deputy Warden Lewis concurred with
23   the ICC's recommendations.  On June 18, 2003, the Classification Office approved the
24   recommendations.  Plaintiff did not appeal that decision.

25    Defendants argue that Plaintiff had until July 10, 2003 (15 work days after the June
26   18 decision), to appeal the decision. Defendants argue that Plaintiff 's failure to exhaust his
27   reclassification claim subjects this entire action to dismissal.

28

It does not appear from the evidence presented that Plaintiff exhausted his classification claim.  However, Plaintiff has raised the issue of classification only in the context of his due process claims and the "injuries" that he suffered as a result of denial of due process during disciplinary proceedings.  Plaintiff has exhausted his administrative remedies with respect to these due process claims. Accordingly, the Court will review the merits of Plaintiff's Amended Complaint.

**IV.  Due Process Standard**

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally-required procedural safeguard.

Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 486.

When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the state to impose." Meachum v. Fano, 427 U.S. 215, 225 (1976).  For example, the Supreme Court has concluded that the Due Process Clause does not grant prisoners a liberty interest in remaining in the general population.  See Sandin, 515 U.S. at 485-86; Hewitt v. Helms, 459 U.S. 460, 468 (1983).

Only a hardship that is sufficiently significant will require due process protections. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).  Three guideposts to consider are: (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint

imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence. Ramirez, 334 F.3d at 861; Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner.  See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997), cert. denied, 523 U.S. 1036 (1998).

If the Court determines that a protected liberty interest has been implicated, Plaintiff must then specify what due process safeguard he was denied, and by whom. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so.  Id. at 565-66.

Once the Wolff procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some facts."  Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) (citation omitted). Due process requires simply "that there be some evidence to support the findings made in the disciplinary hearing." Superintendent v. Hill, 472 U.S. 445, 457 (1985).

**V.  Count I Analysis: Due Process**

In Count I of the Amended Complaint, Plaintiff alleges that Defendant Dodge violated his right to due process of law by his failure to accept the limitations of Plaintiff's existing medical condition for purposes of restrictions in his prison work assignment. Plaintiff alleges that he was "denied of his liberty prior to appealing before disciplinary, disciplinary being due process."

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12

Defendants argue that Plaintiff has failed to allege precisely how he was "punished" by Defendant Dodge and therefore, fails to state a due process claim. Defendants have presented evidence that pursuant to ADOC policy and Arizona statute, inmates at the Department of Corrections are required to work if they are able (Affidavit of Dodge at 1). Workers are assigned to jobs at the prison under the ADC Inmate Work Incentive Program (WIPP), which is governed by ADC Department Order Number 903.  Under WIPP, this policy addresses situations in which an inmate has physical limitations which preclude him from particular work assignments (Id. at 2).  Inmates must complete the Duty/Special Needs Order Form 1101-60P if an inmate has a work limitation. Department Order #1104 authorizes medical personnel to issue special needs orders to inmates who demonstrate a need for special accommodations because of medical needs.  (Id.)  If an inmate has physical limitations that he believes preclude particular work assignments, he must obtain supporting documentation from medical personnel.  (Id. at 3).

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Officer Dodge was responsible for assigning jobs to inmates at the Department of Corrections (Aff. of Dodge at 1).  Defendants have presented evidence that while Plaintiff was housed at the Meadows Unit, he appeared at a hearing to discuss his work assignment (Aff. of Dodge at 3).   During the hearing, Plaintiff expressed that he had a medical limitation but did not produce written proof in the form of a medical special needs order, which is required to justify special work assignments. Id. Defendant Dodge found no entry in the DOC system showing that Plaintiff had submitted a special needs order.  ADOC Medical personnel checked Plaintiff's file and found no special needs orders in effect.  Id. at 5.  Plaintiff refused to visit the medical unit.  Defendant Dodge determined that because Plaintiff did not submit proof that he had a current medical limitation, he did not accommodate Plaintiff's unsupported special need (Dodge Affidavit at 5-6).  This was consistent with ADOC policy and state law requiring inmates to work if able.  Id. Additionally, Plaintiff was not issued a disciplinary infraction notice for his refusal to work. Id.

27
28

In his response, Plaintiff has not rebutted the foregoing evidence.  The only evidence he submits is own declaration, which is rife with conclusory statements and are unsupported

by evidence. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

**VI. Count 2 Analysis:  Due Process**

The allegations set forth in Count II of the Amended Complaint relate to Plaintiff's disciplinary case number 03-A16-0782, which took place during 2003. In Count II of the Amended Complaint, Plaintiff alleges that Defendants violated his due process rights in the disciplinary process.  Specifically, Plaintiff alleges that Defendant Larsen failed to forward a timely disciplinary appeal dated July 2, 2003, failed to notify various sections within the unit of her decision so that corrective action could be taken and failed to notify the various sections within the unit that his disciplinary case number 03A16-0982 was dismissed. Plaintiff contends that Defendants Pierce, Schriro, Walker and Larsen caused the disciplinary sanctions to be executed to their maximum as a result of their inaction and as a result, he suffered atypical and significant deprivation of his liberty including excessive punishment and sanctions which included transfer to a higher custody unit, 190 days reduction in privileges; 10 days of disciplinary isolation and extra work duty without pay (Amended Complaint at 5-5b).

In their Motion, Defendants argue that Plaintiff's transfer to the Rynning Unit does not rise to "atypical and significant hardship." Thus, Plaintiff was not entitled to notice and defense protections provided in <u>Wolff</u>.  Moreover, Plaintiff received due process in his prison disciplinary proceedings.

In support of their motion, Defendants submitted evidence that on May 2, 2003, Plaintiff was referred for reclassification (Def. Attachment 3, Burke Affidavit at 4).  On May 5, 2003, Plaintiff appeared before the Meadows Unit ICC for classification review. The ICC recommended increasing Plaintiff's Institutional Risk Score from 3 to 4 and transferring him to the Rynning unit.  <u>Id</u>.  On May 9, 2003, Meadows Unit Deputy Warden Ricky Lewis concurred with the ICC's recommendations and on June 18, 2003, the Central Classification Office approved the recommendations. <u>Id</u>.  Plaintiff did not appeal the reclassification.

Plaintiff was transferred to Rynning Unit, a Level 4 facility, on July 31, 2003 (Affidavit of Burke at 5).  On September 11, 2003, Central Office Disciplinary Appeals Officer Major Hoover notified ADOC Offender Service Time Computation Unit that Plaintiff's Disciplinary Case No. 03-A16-0782 was reversed on appeal and directed them to vacate the sanctions. Id.  On that same day, Major Hoover wrote to Plaintiff to notify him that disciplinary case number 03-A16-0782 was overturned on appeal. Id.

On October 29, 2003, Plaintiff appeared before the ICC for his statutory 190 day classification review.  Plaintiff complained that he was wrongfully transferred to Rynning Unit and refused to sign the reclassification documents (Def. Ex. 5, ADOC Institution Classification Referral Notice).  The ICC recommended reduction of Plaintiff's I score to one and transfer him back to Meadows Unit. Id.  The Deputy Warden concurred and on January 29, 2004, Plaintiff was transferred from Rynning Unit back to Meadows. (Affidavit of Burke at 6).

In response to Defendants motion, Plaintiff argues that he wrote an appeal of the disciplinary charge on May 4, 2003 challenging the fact that disciplinary case number 03-A16-0671 could not be relied upon in the decision of case number 03-A16-0782, because it was still on appeal (Plf. Response at 3). Plaintiff further contends that Defendant Larsen failed to comply with department policy and did not forward the appeal to Defendant Walker and as a result, he was subjected to 10 day disciplinary isolation on June 18, 2000 (Plf. response at 4). Additionally, Plaintiff alleges that Defendant Hoover issued an Inmate Letter Response dated September 11, 2003 stating in part that the disciplinary violation was vacated, but he never received the response. Plaintiff contends that he is challenging the fact that sanctions were imposed well after the disciplinary case should have been dismissed and therefore, he had a liberty interest in avoiding transfer to Rynning Unit (Plf. response at 8).

Although it is not entirely clear from the facts presented whether Defendants timely forwarded his appeal and whether Plaintiff received copies of the disposition of the disciplinary proceedings, these facts are not relevant to the disposition of this issue. Plaintiff has not alleged, nor does the evidence demonstrate, that the sanctions he received impose an "atypical and significant hardship" such that a protected liberty interest is at stake.

It is well-established under Supreme Court authority that a prisoner typically has no liberty interest at stake in his transfer to a particular facility or a less favorable classification. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (prisoners do not have a constitutional right to incarceration in a particular prison or location); Hernandez v. Johnson, 833 F. 2d 1316, 1318 (9th Cir. 1987) (prisoners have no right to a particular security classification); Montayne v. Haynes, 427 U.S. 236 (1976) (transfer to a more restrictive prison environment is within the purview of confinement contemplated by a prison sentence and is not in and of itself actionable);. Similarly then, Plaintiff has no liberty interest at stake in his desire to remain in the Meadows Unit of the prison.  Without a liberty interest at stake, pursuant to Sandin, Plaintiff cannot challenge the procedures leading up to the decision.  Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

**VII.  Count 3 Analysis:  Due Process**

Count III of the Amended Complaint involves Plaintiff's disciplinary case number 04-A19-0157.  On April 24, 2004, Plaintiff was found guilty of refusing to cell with his assigned cellmate at the Meadows Complex (Def Exhibit B, Dodge Affidavit at 6).  In Count III of the Amended Complaint, Plaintiff alleges that during the disciplinary proceedings Defendant Pierce denied him the right to call witnesses and failed to issue a statement as to why he was denied that right.  Plaintiff further alleges that Defendant Britton failed to comply with ADOC Department Order Number 803, and failed to include witness statements in the packet of papers sent to disciplinary officers.  Plaintiff also contends that Defendant Walker failed to properly address the issue of his inability to call witnesses at the disciplinary hearing.

Defendants assert that Plaintiff has failed to state a claim. Defendants argue that Plaintiff's transfer to the Rynning Unit for 190 days until he underwent the routine classification review does not pose the requisite Sandin "atypical and significant hardship" to trigger due process protection.

Defendants presented evidence that Officer Britton served as the investigating Officer in disciplinary case number 04-A19-0157.  (Def. SOF at 8).  An information report was filed on April 15, 2004, reporting that Plaintiff refused to cell with his assigned cellmate

at the Meadows Complex and that there were no issues between the inmates. Plaintiff was issued a disciplinary infraction. Id. Defendants provided evidence that Plaintiff did not have a DNH ("do not house") with the inmate he refused to cell with. Id. Plaintiff admitted refusing to cell with the inmate and offered no explanation why he refused the order to cell (Def. Attachment 3, Affidavit of Dodge).

Defendants presented evidence that Plaintiff was not entitled to due process pursuant to Sandin and even assuming, arguendo, that he was, Plaintiff was afforded notice and an opportunity to be heard. Plaintiff's disciplinary hearing was conducted on April 24, 2004 by Disciplinary Hearing Officer Captain Pierce in accordance with the guidelines set forth in DI #6. (ADOC Inmate Disciplinary Appeal Response). Evidence was presented that Plaintiff was provided with 48 hours notice to prepare for the hearing under the ADC Inmate Disciplinary Rules (DEF SOF at 13). Plaintiff was permitted under the rules to defend against the charge by presenting documentary evidence and the written testimony of witnesses, as well as provide his own statement. (Def. SOF at 14).

Defendants have presented sufficient evidence that Plaintiff's claims do not rise to the level of "atypical and significant hardship" pursuant to Sandin. Accordingly, Defendants' are entitled to judgment as a matter of law on this claim.

**VIII.  Count 4 Analysis: Due Process**

In Count IV of the Amended Complaint, Plaintiff alleges that Defendant Walker failed to take corrective action once she was made aware that Plaintiff's disciplinary action was dismissed. Plaintiff alleges that as a result of the Defendant's inaction, he suffered atypical and significant deprivation of his liberty (Amended Compl. at 7).

The Court has determined that Plaintiff's transfer to the Rynning Unit did not pose the requisite Sandin "atypical and significant hardship" to trigger due process protection. No material issue of fact remains with respect to this claim and therefore, Defendants are entitled to judgment as a matter of law.

**IX: Conclusion**

Plaintiff has failed to raise a genuine issue of material fact essential to his case. Accordingly, Defendants' Motion For Summary Judgment (Doc. #53) will be granted.

**IT IS THEREFORE ORDERED:**

(1) That Defendants' Motion For Summary Judgment (Doc. # 53) is GRANTED;

(2) It is further ordered that all pending motions are denied as moot;

(3) It is further ordered that this action is dismissed and the Clerk of the Court is directed to enter judgment of dismissal.

DATED this 26th day of September, 2006.

Mary H. Murguia
United States District Judge

- 12 -